UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

RONALD BENNETT,

        Plaintiff,                      Case No. 2:17-cv-35

v.                                                   Honorable Janet T. Neff

HEIDI WILLIAMS, et al.,

        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Ronald Bennett, a state prisoner currently incarcerated at the Kinross Correctional Facility (KCF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants MDOC Director Heidi Williams, Corrections Officer Unknown Goodell, and Deputy Warden D. Dailey. Plaintiff alleges that he was transferred to KCF on April 21, 2016. Upon his arrival, Defendant Goodell told Plaintiff that his word processor was being confiscated because KCF did not allow "typewriters that take disks." Defendant Goodell told Plaintiff that his word processor was never on the historical approval list, and Plaintiff responded that his word processor had been "grandfathered in" pursuant to *Cain v. Department of Corrections*, Ingham County Court No. 88-61119-AZ. Defendant Goodell told Plaintiff that the *Cain* suit no longer applied and that he was issuing Plaintiff a misconduct report for possession of contraband.

On April 27, 2016, the class III misconduct report was reviewed with Plaintiff. On May 3, 2016, Plaintiff received a hearing on the misconduct with Prison Counselor J. Metro. Plaintiff presented a copy of the stipulation and order issued by the *Cain* court. Plaintiff stated that the word processor was sent to him while he was housed at the State Prison of Southern Michigan in Jackson in 1992. At that time, a 1988 court ordered stay was in effect on the implementation of the policy directive regarding prisoner word processors. Plaintiff also told Metro that his property receipts had mysteriously disappeared, but that he had four receipts from two different repair companies indicating that the word processor had been sent out for repair and returned to him. Metro refused to investigate Plaintiff's claims and found that his word processor had never been on the "historical approval list." Plaintiff's word processor was found to be contraband and Plaintiff was told he could have it sent home or destroyed.

Plaintiff filed an appeal, which was denied by Defendant Dailey, who stated that "proof positive of ownership has not been and could not be established by prisoner." Defendant Dailey also concluded that the *Cain* case was irrelevant. On October 31, 2016, Plaintiff was called to the property room and Defendant Goodell asked him for the receipt for his word processor. Plaintiff presented his receipt, but Defendant Goodell told him that it did not contain the proper serial number. Plaintiff told Defendant Goodell "it must have been the receipt to the word processor that was mistakenly sent to him in 2008 by the company repairing his word processor." Plaintiff claims that he returned the word processor that did not belong to him to the repair company, and they subsequently returned his own word processor to Plaintiff.

On October 31, 2016, Plaintiff was reviewed on a class II misconduct ticket for possession of forged documents. On November 2, 2016, Plaintiff had a hearing before Hearing Officer Menard. Plaintiff explained that he had given Defendant Goodell the wrong receipt and that it was not forged. Menard offered Plaintiff the opportunity to waive the hearing and plead guilty, for which Plaintiff would only receive one day loss of privileges. Plaintiff agreed because he believed he was pleading guilty to a lesser offense.

On November 3, 2016, Plaintiff received a copy of the hearing report for the charge of "possession of forged documents: forgery," which indicated that the receipt was handwritten and easily forged "as prisoner can obtain MDOC forms and write [their] own paperwork." *See* ECF No. 1-1, PageID.19. Plaintiff's subsequent appeal was denied on December 20, 2016. Plaintiff states that because the misconduct was a class II, he was not entitled to a hearing investigator.

Plaintiff claims that Defendants' conduct violated his procedural due process rights. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

**Discussion**

I.  Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed

by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff claims that his class III misconduct conviction and the subsequent loss of his word processor violated his due process rights under the Fourteenth Amendment. The elements of a procedural due process claim are: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006).

Plaintiff claims that Defendants' conduct violated due process and resulted in the improper deprivation of his word processor, despite the fact that he should have been allowed to keep it pursuant to the *Cain* case. Initially, the Court notes that it is clear that Plaintiff received due process of law. In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. This due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. The Due Process Clause does not guarantee that the procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284, n.9 (1980). "[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v.*

*Burch*, 494 U.S. 113, 125 (1990) (emphasis in original). Further, an inmate has no right to counsel in disciplinary proceedings. *Wolff v. McDonnell*, 418 U.S. 539, 569-70 (1974); *Franklin v. Aycock*, 795 F.2d 1253, 1263 (6th Cir. 1986).

Plaintiff attaches a copy of the class III misconduct hearing report dated May 3, 2016. The hearing report by Hearing Officer Metro, who is not a defendant in this case, states that the evidence considered in this case was:

> Prisoner Bennett #148380 is present for this hearing and states "the standardized property list was not established until 2003. That was the end of the Cain case, that case allowed us to keep the typewriter. My typewriter doesn't require a disc to operate I can keep this typewriter, my typewriter was grandfathered in. I have a statement prepared." (See attached)

*See* ECF No. 1-1, PageID.16. Metro also noted:

> Prisoner does not have proof of purchase, only receipts for sending it out for repair. The typewriter takes a disc but it is not required for function.
>
> KCF Property Officer Goodell states that the disc is no longer available for purchase and the typewriter is not on the standardized property list or the historical property list.
>
> Prisoner Bennett can appeal this finding and has been advised of that right.

*Id.* In the reasons for finding section, Metro stated:

> The typewriter in question was never on the approved historical property list, and is not on the current standardized property list. The typewriter listed on the contraband removal form takes a disc and the disc [is] no longer available for purchase. The only approved typewriter on the standardized list is the Swintec 2410CC (clear cabinet portable typewriter)
>
> PD 04.07.112 Prisoner Personal Property

> Contraband is any personal property which is not specifically authorized by PD 04.07.112, authorized property in excess of allowable limits, authorized property which has been altered, authorized property which was obtained or sent from an unauthorized source, metered envelopes that reflect tampering, and authorized property which belongs to another prisoner.
>
> Q. Subject to other limitations set forth in this policy, a prisoner shall be permitted to keep a typewriter legitimately purchased prior to July 15, 2003, unless it requires an accessory that is no longer available for purchase, or a disk or diskette, to operate.

*Id.*

Plaintiff filed an appeal of the misconduct conviction. In the appeal, Plaintiff asserted that the reasons for Metro's findings were insufficient because:

> [T]he initial standardized list referenced by the reporting officer, i.e., PD-BCF-53.01, was enjoined by the case of *Cain v. MDOC*, Case No. 88-61119-AZ in 1988. The enjoining of the implementation of the 1988 policy continued the wardens' discretion in the allowance of property into their facilities at the time.

*See* ECF No. 1-1, PageID.17. Plaintiff also stated:

> On August 18, 1992, the Hon. Judge Giddings, the presiding judge in *Cain*, issued [an] order which resulted in the grandfathering of diskoperated typewriters. Further, in 2002, the MDOC issued Policy Directive 04.07.112(P) which stated that if "a prisoner received a typewriter or word processor prior to January 12, 1998, he/she must be allowed to keep it. This requirement was further clarified by PD 04.07.112C(11), which states that "typewriters which require disks or diskettes to operate are prohibited." This is where the hearing officer's reasons for findings fails. The hearing officer as well as the reporting officer has interpreted the language of the policy as disk-operated typewriters themselves as being prohibited - where the policy clearly states that if the typewriter "requires an accessory that is no longer available for purchase, or a disk or diskette, "<u>to operate</u>." My typewriter does not require disks or diskettes to operate, and was legitimately purchased by me in 1994.

*Id.* at PageID.17-PageID.18.

Plaintiff's appeal was denied by Defendant Dailey on May 13, 2016, who stated:

> The misconduct was written, reviewed and heard within the scope of Policy, Procedure and Administrative Rules. Prisoner lists that Cain case as his defense for the contraband misconduct and states that the typewriter is "grandfathered." It is found that the facts of the Cain case are irrelevant in this matter as proof positive of ownership has not nor can be established by prisoner. Prisoner must establish that HE purchased the item in question to create ownership, this has not been completed therefore the charge, hearing and disposition is upheld.

*Id.*

A review of the attachments to Plaintiff's complaint clearly shows that he had a hearing before an individual who is not named as a defendant in this case, which gave him the opportunity to convince an unbiased decision maker that he had been wrongly accused of possession of contraband and should be allowed to keep his word processor. As noted above, the Due Process Clause does not guarantee that the procedure will produce a correct decision. Therefore, Plaintiff's claim regarding the deprivation of his word processor is properly dismissed.

Moreover, to the extent that Plaintiff is claiming that the deprivation of his word processor did not comply with state law, this claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). To the extent that Plaintiff's claim is premised

upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. MICH. COMP. LAWS § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's claim regarding the loss of his word processor will be dismissed.

Plaintiff also claims that Defendant Goodell improperly wrote a class II misconduct ticket on him for possession of forged documents: forgery. As a result, Plaintiff is prohibited from participating in facility fundraising purchases of store items and from obtaining a prison job which

involves computers. Plaintiff asserts that he pleaded guilty to the misconduct because he mistakenly thought he was pleading guilty to a lesser charge.

A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 486-87 (1995). Under Michigan Department of Corrections Policy Directive 03.03.105, ¶ B, a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a Class I misconduct. (*See* Policy Directive 03.03.105, ¶ AAAA). Therefore, it is clear that Plaintiff was not denied good time or disciplinary credits as a result of his Class II misconduct conviction. The Sixth Circuit has routinely held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999). Plaintiff, therefore, fails to state a due process claim arising from his Class II misconduct conviction.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:  May 23, 2017                        /s/ Janet T. Neff
                                                                               JANET T. NEFF
                                                                               United States District Judge